JOHNSON et al. vs. TERRY.

PRACTICE IN SUPREME COURT: *Instructions must be in bill of exceptions.*
Instructions not brought into the record by the bill of exceptions will not be noticed in this court.

APPEAL from *Lincoln* Circuit Court.
Hon. J. A. WILLIAMS, Circuit Judge.
*McCain*, for appellant.
*Jones, Pindall, contra.*

EAKIN, J. On the thirtieth of October, 1876, Terry, as landlord, and Johnson, as tenant, for rent of a farm for that year, claiming under a written agreement for a lease, the rent to be payable about the middle of the month of November. Upon affidavit that defendant was about to remove the crop without paying rent, and had removed a portion without consent, he obtained an attachment and seized it; whereupon, defendant gave bond to retain it.

At the April term, 1877, defendant filed his affidavit de-

nying that he had removed a portion of the crop without paying rent; and alleging that the plaintiff had waived any lien he may have had. There was a third paragraph, denying that the plaintiff was the landlord, and asserting that he was only the agent of Edward F. McGehee, trustee for Blanche B. McGehee, whose consent defendant had, to remove the crop. Upon this, he moved to quash the attachment.

At the fall term, 1877, Blanche B. Stokes (formerly McGehee), with her husband, filed an interplea for the property attached; setting up that the land in question had been conveyed, in 1871, by Terry to a trustee, to secure a debt due from him to said Blanche of $5,200, and that he had delivered up to her the possession, on the first of January, 1876, in order that the rents and profits might be applied to the debt; that they had employed him, and he had agreed to act, as their agent in renting the land for 1876, which fact defendant, Johnson, knew when he rented; and that they supposed that Terry had, in good faith, acted for them until they learned of this suit. They state that, but for this agreement, they would have foreclosed, or taken some steps to secure the rents and profits. That in the spring of 1877 they obtained an order to foreclose the mortgage, under which the lands were sold for $4,500, and that there is still due about $1,500. They say that Terry is insolvent, and that he acted fraudulently in making the lease to Johnson in his own name, wherefore they claim the rents in court, and other relief.

Terry, in his answer, denies that he gave possession of the land, as alleged, or that he acted, in leasing, as the agent of interpleaders.

A trial, by jury, was had on the grounds of attachment; which resulted in sustaining the same.

Johnson then answered, setting up that he had rented from Terry as the agent of said Blanche, but that the written agreement, by accident or mistake, failed to show the character in which Terry acted; and that said Blanche and her husband claimed the rent.

A trial, upon the remaining issues between the parties, was had at the April term, 1868, resulting in a general verdict for the plaintiff, Terry. Whereupon, it was considered that the interpleaders should take nothing by their motion, and pay costs. A motion for a new trial was overruled, and they appealed.

No disposition of the fund appears to have been made, nor is there shown any judgment against Johnson. The questions presented arise on the interpleaders' motion for a new trial. As to them, the judgment was final, and an appeal lies. The trial was, in fact, only on the interplea.

The contract for renting was in evidence. It was drawn by Johnson, and was executed by him and Terry as individuals, disclosing no agency. Johnson, in his testimony, says he does not know why he omitted this, but says, in fact, that Terry told him before, and at the time, that he had turned over the place to Stokes, and was acting as his agent; and that Stokes had requested him to rent to witness, and get him to stay on the place.

Johnson's wife testified that, during the year 1875, she did a great deal of writing for Terry in his correspondence, and knew much of his business. That in September or October, she wrote a letter for him to McGehee (then Mrs. Stokes' trustee), offering to turn over the place, but did not see the answer. Stokes came there in November, after which Terry told Johnson and wife that he had arranged matters, and turned over the place, and that he was to go to Memphis in a few days and turn over the papers. He

went to Memphis, and said, on his return, that he had fixed it all right with Stokes; and that the latter had requested him to rent the land to Johnson. He did rent as Stokes' agent—said so, positively—repeated it on many occasions, and so all parties understood it when the contract was made. She heard Terry say, also, that the draft on the cotton could be turned over to Stokes for rent.

Blocher testified that he heard Terry say, on his return from Memphis, in 1875, that he had turned over the papers to Stokes, and was acting as his agent; and that Stokes had requested him to rent the place to Johnson at $5 per acre.

The trust deed to McGehee was also in evidence, together with a decree in chancery foreclosing the same in 1877, which showed a sale, under the foreclosure, for $4,500, leaving a large balance due. The debt appears to have been due when the contract for renting was made.

Upon the other hand, Terry testified, saying, that he contracted for himself, and not as agent for any one. Denies that he ever told Johnson, or his wife, or Blocher, otherwise; admits that he had offered to turn over the place to Stokes on certain conditions, but nothing came of the proposition, and he never did so. This is all the material evidence, except that it appears that Johnson and Terry were not then friendly, and that Blocher was, at the time he testified, a tenant of Johnson, living with his family.

The court properly instructed the jury that if they believed that Terry had turned over the possession of the land to Stokes, and afterwards rented to Johnson, acting as Stokes' agent, they should find for the interpleader, and refused to instruct them that "the admissions of the defendant against his interests are to be construed most strongly against him." Stokes excepted to the refusal.

The bill of exceptions then shows that three instructions against the, objection of the interpleader were given upon the part of "defendant" Terry. Without transcribing them, it suffices to say that they have no application whatever to the issues on trial made upon the interplea, but were pertinent only to the issues made on the former trial upon the truth of the grounds of attachment; and that, if really given upon the trial now in question, they would have tended to confuse, if not utterly bewilder the jury. There have been several writs of *certiorari*, each of which has brought up a set of instructions, attended with no explanation, and to which there is no reference in the bill of exceptions to identify them as the instructions actually ruled upon at the trial of the interplea.

PRACTICE IN SUPREME COURT: Instructions must be in bill of exceptions. Obviously, the clerk has been confused by the change of position of Terry, who was *plaintiff* in the interlocutory trial, and *defendant* in the interplea, and having all the papers before him, perhaps in confused order, has inserted the wrong instructions. The efforts to correct this by *certiorari* are futile. If not brought into the record by the bill of exceptions, the instructions can not be noticed. This court, on appeal, can act upon the record alone, and *must* act on what appears there. Although entirely satisfied, as men, that his Honor, the circuit judge, did not give the instructions contained in the transcript, in the correction shown, and that he did give other instructions, which, whether erroneous or not, were certainly pertinent to the issue, we can not know it judicially.

It was error to give the instructions as they appear. They would mislead a jury, and confuse them so as to make it very hard to come to any intelligent understanding of the law applicable to the issues submitted.

Inasmuch as there must be a new trial, we deem it best

to express no opinion as to the evidence, or the instructions brought up by *certiorari*.

Reverse the judgment, and remand the cause for further proceedings, with instructions to grant a new trial on the interplea.